Good morning. May it please the Court and gentlemen. I'm here, Katie Kline, here with Bill Mount, and we're here representing the Guijarro family, Joanna, who's the mom, and her two children, who are here on appeal from a district court decision, several of them actually, out of the district court in Brownsville, that refused to sustain or refused to grant a motion for remand on three occasions and granted a summary judgment against the plaintiffs. This was a case in which the mom had rented a vehicle to take a trip with her children. The next morning, they headed out, and on the way, they had an accident. This happened. She went to go rent the car. On December the 7th of 2018, she had ordered a compact car, but there were no cars available, and so while she stood there, somebody walked in with a Jeep Cherokee, and the agent, Isis Trevino, said, okay, well you can take that one. They did not do an inspection. They did not do a test drive. There was no ready slip that was prepared. They violated all of Enterprise's policies relating to re-renting a vehicle. They didn't have the rental ready, and so Joanna takes off with her children, and as she gets to Inez, Texas, she's going to go to an off-ramp, and she testified she was traveling 38 miles per hour. She said when she hit the off-ramp, she pumped the brakes. The brakes failed, and she hit a culvert, and they sustained injuries. DPS got there 40 minutes later. DPS did not do a reconstruction. There was no ability to test drive the vehicle thereafter, and the defendant's expert said the only way you can truly test a brake failure is by a test drive. How does it function? And so what happened here is that a week later, someone from EAN, which is another associate of Enterprise, said you better go call an attorney because there's a recall on the vehicle. We've not honestly been able to find the recall on the vehicle, but she was told there was a recall on the brakes of the vehicle. The defense experts could never say that the brakes were working, and so we filed suit in state court, and we sued Enterprise and EAN and an individual named Mr. Macias who was not served before the case was removed. The case was removed, and we filed a request to amend. The request to amend was in our response to the 12B6 motion. We asked for leave to amend on December 30th of 2019 because there was no statement of the amount of damages sought. And so we were alleging that we wanted to amend and add non-diverse parties, but also we filed a motion to remand because the defendants entered into a stipulation with us that they were unopposed to amendment of the pleading. And the amendment of the pleading was to add additional defendants. So we identified on January 30th, 2020, that Lithia Dealership, which had serviced the vehicle three weeks before, and Isis Trevino, the rental agent, should be added as defendants. After stipulating they had no objection to the amendment of the pleading, and after agreeing that the amendment of the pleading for the addition of additional parties was agreeable, then in the joint case management plan, the defendants objected and said, well, no, we don't agree to the non-diverse defendants. Our first motion to remand was based on the fact that they had an obligation to show that the amount in controversy was over $75,000, and they essentially made no effort to do that. We pleaded our case in accordance with the Texas Rules of Civil Procedure, and we have pleaded damages in the alternative. When I was on the district court, this issue comes up all the time, and it can be hard to predict what the amount is and there's close calls, but here you have a serious car wreck, you're asking for treble damages, you're asking for punitive damages, and you're asking for attorney's fees. In what universe doesn't that create at least $75,000 at issue? Well, first of all, you can't aggregate those damages, which was one issue. Sure you can. For each, you have to look at each defendant. Why can't you, you're saying punitives don't count? No, no, no. The case law says that you can't aggregate the punitive damages, which is Ron Hill v. Levitin and H&E Tire, that you cannot aggravate the punitives, but also you take each plaintiff as an individual. We have stipulated, and in our DTPA notice letter said that the little boy's damages, his medicals were under $50,000. That's the only evidence. They just need one of those, there's three injured parties, right? I'm sorry? There's three injured parties, correct? Yes, mom and both kids. They just need one to be over $75,000, and then the rest can come in under supplemental jurisdiction. But the fallacy in the analysis here is that the defendant has the burden of proof. The defendant has to show by a preponderance of the evidence that the damages exceed $75,000. Right, because the court can use its common sense and say you've got serious injuries in which you're seeking treble damages, attorney's fees. I thought punitive damages do count, but even put that to the side. Treble damages and attorney's fees. Out of an abundance of caution, even assuming that you're right, that the first motion for remand was properly denied. Then they stipulated that the additional defendants that were non-diverse could be added. So then we go and add the non-diverse defendants, and we filed a second amended complaint on February the 14th of 2020. Now, interestingly, the appellees were saying, oh, the judge never gave you leave. Well, the judge clearly gave us leave on the record, and the date that the court did that was on February the 4th of 2020. He stated in an oral order, since this is not in dispute, I'm very agreeable with that. Go ahead and amend your complaint. That is an order of the court. The fact that it was not reduced to writing doesn't make it any less of an order. But there's leave to amend and there's joining parties. Those are two different things. Yes. The court granted leave to amend the non-diverse defendants. So he gave us 10 days to file our amended complaint on the 4th of February, and we filed our amended complaint on the 14th of February as ordered. And there was — then there was a pretrial conference, and at February 4th conference, there was no opposition voiced. In other words, first of all, they stipulated in writing it was okay. Then they go to pretrial conference, and they don't change their position there. They don't voice any opposition, and it was granted, stating that it was unopposed. The court said, well, this is unopposed. I'm agreeable. We'll go ahead and do that. Well, then they get down to the — So assuming you're correct about all that, what do you do with our boarding case that says, in this situation, a court can vacate? Even if there was a joinder, a court can vacate it. And here the district court said, I would, in the alternative, I would vacate my joinder. Very interesting question. But the boarding case, that particular phrase is dicta because all of the other cases that are out there in jurisprudence say, once the non-diverse defendants are joined, you are done. The case is remanded. And the boarding case said, if the — they stated in dicta, if the court's agreeable to joinder of additional defendants, the court can't refuse to remand. But then they said, oh, but you can go back and vacate it. There's not another single case that says that once you've lost jurisdiction, that you can go back and vacate. Your position would be — I mean, I think there is some support for yours. When you file an amended complaint, those parties are actually added to the docket sheet. They're allowed to appear. Ryden Miller does say a common way to join parties is to add an amended complaint. But you have the right in federal court, you get to add — without even needing permission, you get to file an amended complaint within a certain time period. So your position would be a plaintiff could just file the amended complaint within that time period, and then it would be sent back to state court without the district court being able to have any role of determining if — But even more importantly, 10 days later, the court told us that we had specific permission to do that, gave us a deadline to do it, and we did it. So we did it on February the 14th. But I'm not sure you're answering my question. You're saying, yes, that your position would allow plaintiffs in that time period, where they don't even need to seek court permission, they could file an amended complaint, defeat diversity, without the district court having a say in looking at whether this was done for improper — Well, the local rules of the Southern District, I believe, are required to file them with a motion for leave, so I don't want to give you a blanket statement about that because that's what we customarily do. But interestingly enough, the Borden case says we're relying on Cobb. And Cobb says, which is this court's 1999 case, you may not permit a joinder of nondiverse defendants and then not remand. If you permit it, the court takes an affirmative action to permit it. The case is gone. You may not do both. So it's a fallacy for Borden to say that we're relying on Cobb when Cobb is very clear and unequivocal. That's why I take the position that that's dictum. When the court made the oral statement that you're allowed to amend, did it have a copy of the proposed amended complaint? Because as you said, normally when you file a motion, we want to amend our complaint. You have to attach the proposed complaint, so it's in front of the court. It's my recollection that it had not been filed because the court said go ahead and do it within 10 days. So I believe that it was not before the court. So it didn't know what it was going to say, who it was going to add. Except that the parties were disclosed. The parties were disclosed on January 31, 2020. So the parties were disclosed at the joint case management plan, in the joint case management plan, which is the first time that the defendants objected. And so then there was no further opposition on February the 4th. And then on March the 13th, the nondiverse defendant Trevino actually answered and filed a 12B6 motion. And oddly enough, Judge Rodriguez has never stricken, he never struck that answer. That answer remained and that party remained all the way up to the entry of the final judgment. So now we have a final judgment entered with a nondiverse party joined who has been nondiverse since joined and answered on March the 13th of 2020. And then Lithis was sued and Lithis was served and filed an answer on April 3rd of 2020. So if the defendants filed a stipulation, then they turned around and filed a stipulation, which they had agreed to do in their advisory to the court. But they didn't send it to us to sign. So the defendants filed a stipulation, okay, we stipulate that the proper party is EAN, not Enterprise. But the advisory to the court had said we're going to enter into a stipulation. However, there's got to be appropriate wording. We've got to work it out together, basically. And they went ahead and stipulated on their side without a jointer of the plaintiffs. They got the relief they wanted. They got Enterprise dismissed. But we did not get our part of what the stipulation was supposed to provide. And so then the second and third motions for remand were denied. The second one is the one that I think is the most offensive. And then a summary judgment was granted. Well, they say, well, no harm, no foul, because you didn't have a good case anyway. Well, we then filed a motion to alter, which was denied, or to amend and take a notice of appeal. In the issue before the court, they're saying, well, you're bound by Nissan. And I know that certain justices are very familiar with Nissan. But Nissan was an acceleration case, an unintended acceleration case. The most important thing about Nissan that I think bears mentioning is it's not controlling in this situation because Nissan did not dismiss the DTPA claim. Nissan did not dismiss the negligent misrepresentation claim for lack of expert testimony. That issue was not before the court on the DTPA and the negligent misrepresentation case. And Nissan was a products liability case. It was whether or not you can get to the manufacturer on an issue of design. Well, obviously, on an issue of design, you would need to have an expert. But there are cases that provide that certain defects and certain experiences are subject to the human recollection and observation. And remember, again, that the defendants are a stop to deny their stipulation. And their stipulation was that these non-diverse defendants would be added. But Isis Trevino had a duty to provide a safe vehicle. And under Aguilar v. Walmart, they said if you undertake affirmative action, you have to use reasonable care. We had two forms of evidence in the summary judgment. We had, number one, the testimony of the driver. But secondly and more importantly, we attached portions of the defendants' experts' deposition that said the best test is a test drive, and we can't do that. Best case is you have to have inspected the vehicle. They said also that the defendants' experts said that they couldn't say the brakes were working either. They could not offer that evidence. But remember, in summary judgment, all the presumptions are in favor of the non-moving party. And so if the plaintiff says, I pushed my foot to the brake, to the floor, and it did not stop, and the trooper says, I don't know, I didn't reconstruct the accident, I can't tell you, all I can say is it appears that she was driving at an unsafe speed, but he didn't have any calculations on that as well. And remember that the defendants said the bodily injury damages are not recoverable under DTPA. So that's an interesting thing, too. They want to rely on the DTPA letter, but then they say medical expenses are not recoverable. So that's a fallacy in the defendants' position as well. Remember that the defendants have a heavy burden on removal and that the defendants have not met their burden, so the case should have been remanded. We're asking that the dismissal under the summary judgment be set aside and the case be remanded to the district court in order for it to send it back to the state court. May it please the court. Your Honors, my name is Lavon Hovnatanyan, and along with Danny Vanna, I represent the Appellees in this case, EAN Holdings and Enterprise Holdings. If I understand one thing about this case, it's that what this court said in Borden was not dicta. That was the actual holding. A little context. Cobb was about fraudulent joinder, and the court said there's a time to apply fraudulent joinder and there's a time not to apply fraudulent joinder. Borden followed Cobb. In discussing Cobb, the court said, we may have accidentally created one or two issues here, but here's how you get out of it. And then the court said, Cobb seems to create a trap for the unwary, diverse defendant or a device exploitable by a clever plaintiff. But the district court could have either denied joinder to begin with or it could have vacated its order of joinder. Is that consistent? I mean, the statute says if the plaintiff after removal seeks to join additional defendants whose joinder would defeat jurisdiction, the court may, one, deny joinder or permit joinder and remand the action to the state court. I mean, the plain language seems to say if the joinder's accepted, it goes right back to state court. Where's the wiggle room in the statute? Your Honor, the wiggle room, and first of all, that statute is a codification of Cobb and Henskin. And the wiggle room is that the statute doesn't forbid vacateur, nor does it affirmatively state you can do that. But this court's jurisprudence has said the wiggle room is the ability to have a third option, which is vacate. For instance, in Henskin, both sides rely on Henskin. That case has two real, real applications here. The first one is it provides the factors that the district court looked at. But the second one is the disposition. Because in Henskin, this court said in 1987, there's a nondiverse defendant, so we have to vacate this judgment. And then for the disposition, the court did not remand it to the district court with instructions to remand the case to state court. It remanded it to the district court to apply the Henskin factors and to determine whether to permit joinder. That's at page 1182 of that opinion. That's precisely what the district court did here. Whether you look at this as there was permission, and there wasn't, by the way, and I'll get to that in a minute, but even if you presume they're right about that and the district court gave leave, he's still entitled under Borden to vacate it. He even said that, the district court even said that in that remarkable order on pages 403 to 06 of the record where the district court lays out the whole history. And he says even if the issue was reaching the merits of whether to allow joinder of Lithia and Trevino, because the court permitted joinder as a routine matter, the court would invoke its inherent authority to vacate its previous ruling. That's consistent with Borden. It's consistent with Henskin. It's the right result. And with due respect to opposing counsel, there are other cases where that is precisely what happened. In Bramlett v. Medical Protective Company, the Northern District of Texas in 2010, wrote, the court now vacates plaintiff's joinder of Dr. Phillips as a party defendant. The court is authorized to reconsider plaintiff's amendment and vacate the joinder on its own initiative. The Fifth Circuit recognizes that a district court may avoid remanding a case pursuant to Section 1447E by vacating its earlier order of joinder, not surprisingly citing Borden. And Judge Costa, I might have been a little fast on that. It's Bramlett, B-R-A-M-L-E-T-T, versus Medical Protective. It came out of the Northern District of Texas in 2010. And that case is not an outlier. In Jordan v. Republic Services, the Western District of Louisiana in 2019, wrote, the plaintiff's unopposed motion for leave to file second amended complaint is granted subject to the right of the court to vacate this order if it is determined. Your way of squaring this with Judge Costa's point about the text is you are essentially denying joinder by vacating it. Well, Your Honor, that's undoing the joinder, which Borden and Henskin says the court is entitled to do. That's our alternative position. Our first position is he never granted them leave in the first place. But it doesn't matter. I'm going to ask about that because when you seek leave to amend the petition, the complaint, and that adds parties and that's granted, those parties are immediately added to the case. I mean, you go on the docket sheet. You know there's new parties that their counsel can make an appearance. And Wright and Miller says you can file a motion just to add parties without a new complaint. But it says the most common way to join new parties is filing an amended complaint. Correct. So why isn't the court's approval of the amended complaint joining the new parties? Well, because the court didn't approve it, Your Honor. And let me explain that. Okay, that's different than saying approval isn't joinder. You're saying there was no approval. Correct. What did he say at the hearing then? Well, it's important to start with the objection. Okay, because in the joint advisory ‑‑ I'm sorry, not the joint advisory. In the 26F filing that the parties did jointly on January 31st, the defendant said, we do not agree that Lithia Corpus Christi or the rental car agent, Isis Trevino, who rented the vehicle are necessary or proper parties to this lawsuit. Then at the hearing, the judge said, look, I read your joint advisory. It sure looks like I can interpret that as a request for leave. And then he said, I'm agreeable to that request. No one said anything about Lithia. No one had said anything at the hearing, that is, about Isis Trevino, and the defendants already had an objection on the record. So they filed the second amended complaint, and Lithia and Ms. Trevino were added. And then the court says, well, I didn't grant you leave to add Trevino or Lithia or any other nondiverse defendant. And then he says, even if the ‑‑ In response to my question on the other side, there wasn't an amended complaint in front of the judge. There was not. That had those new parties. That is absolutely correct. I agree with the opposing counsel. It had not yet been filed. And the court said, you know, in that remarkable order that, look, I interpreted your joint filing, your 26F filing, as the only parties that you were seeking leave to amend were nondiverse defendants because the defendants had already objected to Lithia and to Ms. Trevino. And he said the only logical conclusion of other responsible parties are other responsible parties except them because that was an agreed filing and the defendants had objected. So the question is, well, I guess there's two questions. Is the judge in the best position to interpret his own order? I think that's a question that answers itself. And then the second question is, is that a reasonable interpretation? Of course it is. Because the defendants had already said not Lithia and not Trevino. And the court said, I never told you otherwise. And therefore, I never gave you leave for those or any other nondiverse defendants. Then going the extra mile, the court said, okay, you know, I can play Henskin too. I'll look at the factors. I'll make a separate determination. And the court said, no, you lose under Henskin as well. And then, of course, he pointed out, I could also vacate this under Borden. There's literally at least three different ways the court was right in this case, any one of which, of course, suffices to show that there was diversity jurisdiction. So we think there clearly was diversity jurisdiction, especially if you interpret the court's order in front of everything the court had at the time, including the defendant's objection and his authority under Henskin and his authority under Borden and the fact that he never said, you can specifically add Lithia and Trevino to this lawsuit. And, of course, if he'd known that they were going to try to add nondiverse defendants, we all know what he would have done. He would have said, no, I'm not giving you leave. And, in fact, he didn't. So you're reading him essentially to be saying, the court to be saying, you can add additional parties contingent on them being legitimate parties, not fraudulently joined. Absolutely. That's one way of looking at it, Your Honor. The judge was actually a little bit more specific. He expressly stated in one of his orders, the way that I understood other responsible parties was to the exclusion of Lithia and Trevino. Correct. Correct. And I guess— That's a different question that no party has argued, but it's jurisdictional, so we have to consider it anyway. Of course. The original—I think in state court, the plaintiffs added George Macias as a defendant. Correct. Yes. And when it gets to federal court, for diversity purposes, because he's in state, defendant, Texas defendant, it says, well, he hasn't been served, so we're not going to include him in figuring out whether there's complete diversity. What case law says if someone hasn't been served, they're not included in the diversity analysis? Your Honor, I'm not—I can't tell you a case off the top of my head. I think there's case law going the other way. Well, but—and what the court went on for Mr. Macias was he's not a legitimate party, to use Judge Ho's term. He's not a real party. He's not a legitimate party. He was the manager— Did the court say that, too? I thought it just said, I'm not going to consider him because he wasn't served. Your Honor, and I believe that's correct, but— It might be that the other analysis that went to some other parties would also apply to Macias. I get that. That's fair to say because Trevino and Lithia, the same analysis would apply to Mr. Macias. And as the court knows under the standard of review, if there's something in the record that supports what the court did, then what the court did is supportable. And that's why I'm arguing— We can affirm on any basis available. Precisely. Precisely. And that's why I'm arguing Mr. Macias was merely the manager of the Enterprise Rent-A-Car station in Brownsville. And just like Isis Trevino, nothing but passive conduct. In fact, the Guijarro parties never actually interacted with Mr. Macias, unlike Ms. Trevino. But all he was is the manager engaging in passive conduct, doing his job, and overseeing his franchise. He didn't have any independent legal duty to the Guijarro parties. And so he's not a legitimate defendant any more than Ms. Trevino is for the same reason. Or as the court put it in the Nestor v. Penske case out of the Western District of Texas in 2014, it was a remarkably similar case involving a Penske truck rental agency, and the agent's name was Smith. The court said Smith is an individual employee who simply filled out the paperwork. He was merely acting within the scope of his job duties when renting the truck to the plaintiffs. He did not have any duties separate from those owed by his employer. That perfectly describes Mr. Macias and Ms. Trevino. The court in that case said there's complete diversity because Smith is improperly joined. That's analogous here, where there was no cause of action against Mr. Macias or Ms. Trevino to begin with. They didn't have any independent legal duties outside of EAN, their employer. That brings me to Armstrong. Armstrong and Judge Richman was on the court in 2004, might remember the case. There's two key phrases in that case. Expert testimony is the first one, and the second one is objective proof. The court said in a case dealing with unintended acceleration, you have to have those two requirements. And then the court said something that is absolutely case-breaking as far as the appellant's argument. After the court gave those requirements, the very next sentence was in Armstrong, these requirements are not peculiar to unintended acceleration cases. That's on page 137 of the opinion. That's the Texas Supreme Court saying we're not just talking about unintended acceleration cases. We're talking about automobile defect cases, product liability cases where the product is a motor vehicle. Now, if that— But the counsel says this is a DTPA case. And, Your Honor, well, it is. As they pled it, it is also a DTPA case. But it's inescapable that it's a products liability case. It fits the definition perfectly of products liability. Did you send Nissan Armstrong to DTPA? Well, Your Honor, but— Or did it come on out? Well, I mean, Armstrong applies to any case involving an automobile defect regardless of what is pled. In fact, Armstrong pretty much comes out and says that, that we're just talking about a case— No matter what the cause of action is— Correct. Absolutely correct. What in Armstrong says that? Well, Your Honor, unfortunately, I knew the one-page number. I don't know the other. I'm happy to write a letter to the court similar to a 28-J letter if you'd like. But I actually can do better than that. I can give you the cases that applied Armstrong and that take that key language about this is not just peculiar to unintended acceleration cases. There's at least three. Williams v. Genie Industries came out of the Southern District of Texas in 2005, and that case dealt with brakes just like this one, an alleged malfunction in brakes. Now, to be fair, it wasn't a Jeep. It was a lift being driven down a loading ramp. But the court applied Armstrong to brakes. Eleven years later, it happened again in Madeer from the Western District of Texas in 2016, where the allegation was an axle and a tire had malfunctioned. The plaintiff was driving an SUV. The court applied Armstrong. Two years later, in Velazquez, it was another case involving an allegedly malfunctioning tire, and the plaintiff was driving a truck, and Armstrong was applied. I think, Judge Ho, I think one of the answers— Just to be clear, those are federal district court cases. They are. They are. Sitting in Texas, correct. Applying Armstrong in those— Your point is nobody's construed Armstrong against you. That is certainly correct. Everybody's construing it in your favor. That is certainly correct. The only— DTPA cases. Well, Your Honor, to be honest, I don't recall if those were DTPA cases. I know negligence was one of the causes of action in those cases. I know they were products liability cases. I can't recall off the top of my head if the DTPA was in one of those or not. But it shouldn't matter, because even a DTPA case that's based on a product defect is a product defect case. Okay, but you are making us—you're asking us to make an eerie guess, then, that the Texas Supreme Court would say, of course, Nissan applies. Your Honor, I mean, technically, yes. I absolutely am. I'm asking you to make an eerie guess. There's not a Texas state court case that says Armstrong applies here and Armstrong applies there. Is that worth certifying, or do you think it's an obvious call? I think it's an obvious call. I mean, certainly certification occurred to me. And Mr. Vanna and I talked about this. Do we ask them to certify? Do we not ask them to certify? This Court's history shows that Terry Black's being the most recent example, a case of first impression, hugely important. The Court said, no, we don't need to certify. We get the stakes are high, but it's a fairly obvious question. There are intermediate Texas courts that have applied it to DTPA claims. To DTPA claims, Your Honor? In your favor, that have applied this Nissan to DTPA clauses of action. Out of the Houston Court of Appeals, there's a couple. Terrific. And contract claims. I'm going to sit down knowing more than I did when I came up here. Hill v. Sonic Momentum, GB Tubulars v. Union Gas Operating. I suggest your clerk deserves a raise. It's on the Texas Supreme Court. Okay. Understood. Well, then maybe I narrowed my focus a little bit too much by looking at federal district court cases sitting in Texas. But those three applied Armstrong following the language that it's not peculiar to unintended acceleration cases. But to return briefly to Chapter 82, it depends on the definition.  of damages arising out of personal injury, death, or property damage allegedly caused by a defective product. And then, Judge, it goes on to say whether the action is based in strict tort liability, strict products liability, negligence, misrepresentation, breach of express or implied warranty, and then most crucially, or any other theory or combination of theories. Language that broad has to apply to the DTPA. So it can be a products case. They can plead DTPA. It's still a products case. And so Armstrong would apply regardless of what their cause of action is. Now, Chapter 82, and I see I'm out of time. May I finish my thought? Chapter 82 was an alternative way of affirming the summary judgment that the district court granted in this case. We asked the court to consider that as well. Even though the judge didn't base his ruling on that,  Shirley, would you please add a minute to her rebuttal time? Before you get started, do you have any cases that declined to extend the Armstrong analysis to the DTPA? No, I do not. But I think that the cases are very distinguishable, and specifically wanted to mention that the cases are distinguishable because they're considering this to be a products liability case. This is not a products liability case. He mentions Chapter 82. Chapter 82 relates to a seller of a vehicle. This is not a sale of a vehicle. Just to the extent that your argument is that the Texas Supreme Court would not want us to apply Nissan or Armstrong to the DTPA, what is your basis then if there's not authority? My basis . . . I get that Nissan itself is not a DTPA case, so everybody's agreeing, we're guessing, as to what the Texas Supreme Court would do. Why is your guess that they wouldn't extend? Because philosophically it stands in a different place, and that is that a seller or a person who doesn't have a direct relationship with the individual, such as in a products liability case, you have a manufacturer, then you have a seller, then you have the buyer. Can you say what specific provision of the DTPA you're going under? What are the elements of proof? The warranty of merchantability is one of them, and the representation that a product has the characteristics that it does not, which specifically the court has already ruled . . . So you have to show that the brakes were defective, and so they were lying. So why doesn't it still implicate the analysis of needing an expert to show that the brakes were . . . I mean, doesn't your claim even under the DTPA depend on showing the brakes were defective? If the brakes were working perfectly, and it was just driver error or the bad conditions, how do you have a DTPA claim? That is the ultimate issue that goes to the jury, and this is the consideration that the court has to make, is that the ultimate issue does go to the jury, but on summary judgment evidence, that the presumptions are in favor of the non-movement. Do you agree, even under your DTPA claims, you have to show a defective brake? That's the premise of your claim. If it's a product, if you're talking about a defective product, here we're talking about a warranty of service. We're talking about the fact that they failed to service the vehicle, they failed to detect that Lilith failed to detect that the brakes were not working. Right, it depends on the brakes not working. But on that occasion, that's a fact question. Did they fail to work on that occasion? And the plaintiff can testify that on that occasion she put the brakes to the floor and they did not hold, but also the defendant's expert testimony that was attached as a response to our motion for summary judgment shows that they said you really can't tell if the brakes failed to work on that occasion unless you're able to— I don't understand how that— No one could ever know their perfect after because the car was never driven again. What we don't know is whether or not the customer that brought it in, brought it in with brakes that were not working properly at a particular, at a highway speed, and failed to disclose that. And they don't know that because they didn't go through the rental-ready process that's required. You're saying the prior driver said they weren't working? No, no, I'm saying that we can't—we don't know what the prior driver had experienced with that vehicle because the prior driver walks in the door, hands him the keys, and they give the keys to Ms. Guijarro. Why didn't someone depose the prior driver? Well, that's not at this point—at this point that has not been done. But the point of the matter is two of the cases that I wanted to talk to you about, we shouldn't have even gotten to the summary judgment because International Energy Ventures says if a non-diverse party is joined, the only issue is jurisdiction. And that 1447E says joinder of a non-diverse defendant requires remand. So there Ms. Guijarro and her children were denied due process because the court went back and revisited joinder when he no longer had jurisdiction. And the defendants were estopped to deny that they had agreed to the joinder of the non-diverse defendants. And that's ergo science, which is also a Fifth Circuit case, 1996. International Energy is also a Fifth Circuit case. So we don't even get to the point of summary judgment because this case should have been remanded. The court lost jurisdiction as soon as those non-diverse defendants were joined. And it can be argued that Macias was a non-diverse defendant all along. But the point of the matter is that they entered into a stipulation that they apparently didn't think to object to. Can you argue estoppel below? Yes. Yes, we argued judicial estoppel when we told the Court in the third motion that the defendants did not timely challenge the joinder and that the defendants had entered into the stipulation. And the Court said, and we told the Court there's a judicial estoppel. And he said, well, I've got inherent authority. I've got inherent authority. Assuming we reach the Armstrong issue, is that something you want us to certify to the Texas Supreme Court? Well, it might be a very good thing to do. It might be a helpful thing to do because there are no cases that are really parallel or that are the same. Clearly, an unintentional acceleration, anybody can say anything they want. But for a person to specifically tell the DPS trooper at the scene, I pushed the brakes to the floor and they didn't work. To tell the people at the hospital, I pushed the brakes to the floor and they didn't work. That creates a fact question. And taken together with the defendant expert's testimony that you can't know if the brakes failed on that case and if you didn't test drive it and the defendants failed to test drive the vehicle, and that's Isis Trevino's individual responsibility because he was identified and she, I'm sorry, she's the one who made the determination to re-rent the vehicle without any repairs or any inspections. Destroyed before anybody had a chance to examine it? What happened to the vehicle? I'm sorry? Why wasn't the vehicle's brakes examined? What happened to it? What happened was that our client got to the rental counter and had ordered a compact car. They had no vehicles. No, I meant after the accident. Oh, it was totaled and sent to a lot in San Antonio. Why didn't anybody examine the brakes? It has been examined. And there's conflicting information about what was found. But the information . . . The defense experts say there's no problem that they could detect. Well, yes. You don't have any experts on . . . We have not identified experts at this point in time because the defense experts also agreed that they couldn't say that the brakes were working and because we believe that the PACE law allows for lay opinion testimony on things that can be rationally perceived by an individual. So that's why we believe that with the presumptions being the way they are, some of the judgments should be reversed. If there are no other questions, thank you very much for your time. That will conclude the arguments. Thank you. This and the other cases we've heard this week are under submission. Thank you.